Good afternoon, Illinois Appellate Court First District Court is now in session. The Sixth Division, the Honorable Justice Mary L. McPherson presiding case number 21 dash 1592 people versus Randall Brown. Welcome console. As you probably both know you will have 20 minutes aside before we start timing you. I would like you to let me know who's going to argue, and for the appellant please let us know if you'd like to reserve any of that 20 minutes. So beginning with the appellant. Good afternoon, your honors. My name is David Holland I represent the appellant Randall Brown. If I may have five minutes for rebuttal. And for the state. Good afternoon, I am assistant state's attorney Amari Dawson representative for the people of the state of Illinois. Welcome to both of you Mr Holland whenever you're ready, you may proceed. Thank you, your honors counsel and may it please the court. There was an air of hostility during these proceedings from the judge directed towards Randall Brown, and this hostility manifested itself both in the way the judge handled Mr Brown's jury, and in the sentence itself. I intend on using my time to discuss the fact that the judge hastened the verdict in this case, but I do want to emphasize that the, the sentence here is far too long. Having your car broken into is absolutely a nuisance and it's annoying and it's worthy of punishment, but 10 years in prison in this case is excessive. This is a 2019 burglary to an automobile. And as we sit here today in 2023 Mr Brown is incarcerated, still, and he's going to be incarcerated tomorrow and the day after, and the year after that and the year after that and the year after that. And the sentence here is, it's inhumane and it's vindictive, when the vindictiveness that led to the sentence. It started at the beginning of these proceedings, and it led into the jury trial. We listed in our brief, there were a number of instances leading up to the jury trial that showed a hostility towards my client, because that he was waffling on whether or not he was going to plead guilty. I won't rehash all those, but for example, at one point when my client said he was going to go to trial, the judge said, as somebody told me, son, you better win. I mean, this sort of flippant comments then bled into the jury proceedings, because after several hours of deliberation, the jury sent a note asking if the decision comes down 11 to 1, will he be found not guilty? When that question came in, there really was no exercise of discretion there, because before defense counsel was even in the room, the judge said that he wasn't going to answer that he was going to issue this prim instruction. But when counsel arrived back in the courtroom with a proposed answer to this question, the judge didn't even entertain it. Counsel, is it fair to characterize giving the prim instruction as an answer to that question when you're not whining? It's not fair to characterize the prim instruction as the answer to the question. It's non-responsive. I mean, the short of it is that the answer is if the decision comes down 11 to 1, Mr. Brown could be retried. We all know that. But of course, the jury wouldn't know that. But we all know. You know the answer to that question. But most jurors wouldn't. They'd think double jeopardy or something. That was the end. But is it also an answer to say, well, your verdict has to be unanimous, not a verdict, which is basically the prim instruction? I would say no. I would say it's still non-responsive. Because the parties below didn't take the question to mean that the jury does not understand the verdict forms. I mean, the jury is explicitly asking what would happen with a hung jury. And, of course, we lawyers know the answer, that it would be Mr. Brown could be retried. But a lay juror definitely doesn't know that. And the problem here is that the judge simply ignored the question. And the problem there is that it allows the jury, which the judge well knows is now split 11 to 1, to labor and deliberate under a misapprehension that the minority juror could be letting Mr. Brown walk if she sticks to her convictions. It would be an impermissible argument for a juror to make to a fellow juror to say, you know, if it's 11 to 1, then this guy is going to be found not guilty. And the question itself actually encapsulates that. All the parties below believe that essentially that the jury was saying we're at 11 to 1. What would be what's the implication of a hung jury? And what's disturbing here is that. Mr. Holland, let me ask you this. The question is, if the decision comes down to 11 to 1, is the defendant to be found not guilty? Right. We already know that the jury was instructed that. A verdict of guilty or not guilty must be unanimous. The prim instruction says a verdict of guilty or not guilty must be unanimous and that it also instructs jurors to, you know, not to give in to just to get a verdict, to hold on to your strong held beliefs. So why is that not? Why is that answer not? Accurate answer. Is the defendant to be found not guilty? The answer is, well, it has to be unanimous. Why is it not accurate? Because the jurors, it's not it's not that that's not it's inaccurate in any way to say the verdict has to be unanimous, but the jury is asking what are the implications if we are not unanimous, which is is not apparent to a lay juror. And is that what the jury is asking? The jury is asking if it's 11 to 1 is defendant to be found not guilty. Right. It does. It doesn't ask the implications. It says is a defendant to be found not guilty. I suppose you could say no. But we know that the jury instructions already say that finding a guilt or not guilty has to be unanimous. The prim instruction says it. So, I mean, what more is there? Well, I think the problem, Justice Taylor, with your hypothetical is if, for example, that the answer was simply no, then that would be an oddly conflicting instruction with unanimity that now we'll be telling that 11 to 1 is the equivalent of a not guilty. And I think in the bigger picture, one of the problems here is that the judge is not simply that the judge is refusing to ask this question. It's that the judge, after refusing to answer this question, then gives this prim instruction of which the very last thing that the judge, excuse me, that the jury hears from the judge is that your sole interest is to ascertain the truth. And if you don't have a verdict by 5, 530, you're going to come back tomorrow and deliberate again. And we're going to do this again until I decide otherwise. So it's essentially one full sequence where the jury does not have their question answered. Counsel proposed an answer that was correct. And the judge never entertained it. In fact, after the counsel proposed the answer, the entire analysis here over the question was not an exercise of discretion. It wasn't a determination. Is this question factual or legal? Is the answer accurate, neutral, and simple? Instead, the judge says sort of flippantly to defense counsel, are you asking me to hang this jury? And the state pipes in right there and says, yeah, that would be an out. And disturbingly, the judge agrees with that and says, yeah, I'm not going to do it. But, of course, it's not an out. A hung jury is one of three valid outcomes in a jury trial. And it's only an out from the state's perspective in the sense that it could very well embolden a juror to maintain a sincerely held belief that the state hadn't met its burden of proof. And a hung jury trial is not just a legally valid outcome. There are significant real-life implications for the defense bar and for my client specifically. A hung jury is a victory. I'm sorry, Mr. Holland. Mr. Brown's opposed answer to the question, and I'm paraphrasing here, but the jury is not able to reach a unanimous verdict. The case remains on the court's docket. The defendant isn't found either guilty or not guilty. No judgment is entered, and the Cook County State's Attorney's Office is entitled to prosecute the case before the jury. It's not a particularly artfully worded answer. You know, I mean, literally speaking, it almost can be understood that the case would continue to be prosecuted before this very jury. You know, it doesn't say that a mistrial is declared, that the jury is discharged, and that the state then has the option to retry the case before a new jury. Literally speaking, you know, you can read this proposed answer to mean that it's the same jury. It's not very clear to me. I'd agree that there are grammatical mistakes in the proposed answer, although unfortunately the judge and his elbow clerk didn't maintain any of the jury questions, answers, or jury instructions in this case. So it is an oral transcription, which I'm sort of certain that at least my colleague below wouldn't have the grammar so wrong. But I think what's critical in this case is the reason it was rejected was not because the grammar needed to be cleaned up. There was no discussion whatsoever about the accuracy of the answer or the parties agreeing perhaps this is an accurate answer, so let's clean it up and make sure the language is correct. Instead, it was just a knee-jerk rejection of the proposal on the grounds that it could lead to a hung jury. But we don't refuse to answer a jury's question on the grounds that it could maintain somebody's sincerely held belief. It's really only from a state's attorney's perspective that refusing to answer that question would be appropriate. You know. You acknowledged, right, that the court may refrain from answering a jury question when the instructions already explain the relevant law. And the question here was if it's 1101, the defendant found not guilty. Well, the instructions already say that a finding of not guilty has to be unanimous. The prim instruction says it. So why is this error? Actually, just a correction. The instructions don't say that a finding of not guilty has to be unanimous. A finding of not guilty does not have to be unanimous. Well, I guess to the extent if he were going to be retried, one juror could cause the case to be retried. So, yeah, I guess to the extent that, yeah, the finding of not guilty or the finding of guilty has to be unanimous. But I think what you're arguing, Mr. Holland, is that this question was a direct legal question which required the court to answer. Is that what you're arguing here? And our Supreme Court has said that the trial judge is required to answer legal questions from the jury. Is that what you're arguing? Correct. So why don't you answer Justice Taylor's question? Right. Yes. To echo Justice Walker's response there, Justice Taylor, I'm arguing essentially twofold, that unanimity was not the thrust of this question. It certainly wasn't the thrust of the question for the parties below about a confusion about unanimity. And although there is discretion whether or not to answer the question, in this case, there wasn't really any dispute that this is a legal question where the answer would be the same in every case. So I think our Supreme Court is directing lower courts to answer these questions. And our position is that answering these questions would aid the jury. I mean, the state is taking the position below, at least, that somehow responding to this question would be a bad thing, that it would be this sort of unafforded answer, excuse me, advantage to Mr. Brown. But our Supreme Court and, frankly, all over the country, there's a pretty strong movement towards the idea that we want jurors to be engaged. We want jurors to be asking questions and that if a jury asks a question, and it's a legal question, it's an appropriate question, the general presumption is that it should be answered. So, Mr. Holland, if – I'm sorry, Justice Meek. My question sort of following up on what you were saying is, and if you don't know the answer, that's fine, but is this a recent development in the law? For example, what the Supreme Court said recently in Lewis about answering the jury's questions, or is – I thought we might know as an OSAB law nerd whether this is something that's happened recently. Well, the principle that legal questions need to be answered and actually the general presumption that questions should be answered, the Supreme Court in Lewis does cite older cases. I think Childs is one of the leading cases on that. And when I'm saying that there's sort of a movement to have jurors be engaged, that's – I am referring to more like pilot programs where jurors ask questions and things of that like. But the refusal to answer this question is just highly aggravated here by the judge's giving of a prim instruction that was legally incorrect. I mean, the defense counsel further – first stated that we should answer the question. But then when the judge is saying I'm going to give the prim instruction, counsel rightly points out that the prim instruction ends with this exhortation that you need to ascertain the truth and rightly suggest why don't we just change that to be the actual standard that applies in criminal cases. Again, the judge just didn't entertain it at all, simply dismissed it. There was no exercise of discretion there. And then unbeknownst to the parties, with no forewarning, the judge ad libs a new conclusion to prim. And I think it's easy to imagine the impact of that because you're reading the prim instruction and it's verbatim. You're looking down. You're reading a piece of paper. But then the judge adds this conclusion that I'm sure has had some impact with this jury because it's the very last thing the jury hears and it's in conflict with what he said the day before. And that is that if you don't have a verdict by 5-5-30, you've got to come back tomorrow. And then there's this sort of oddly veiled threat that we're just going to do this indefinitely. You're out of time, but I want to return it to Justice Taylor and let him explain that I've interfered with time. So go ahead, please. Thank you. So, Mr. Holland, I want to get back to the question. It seems that it's an answer searching for a question. If the question was, what happens if we're stuck or deadlocked or we just can't achieve unanimity, then what happens? Then you might have an argument. But here the question was, if we're 11-1, is the defendant found not guilty? I mean, isn't there a difference between those two questions? It seems to be that you're arguing the former and not the actual question that was put to the trial judge. Justice Taylor, I'm arguing that this court can look at all the circumstances of the case. And we know that this jury, this jury was in this hours-long, lively, heated debate. As the judge put it post-trial, you could actually hear voices were raised behind the door in the jury room. So I think it is – we're in a situation with 11-1 split where it is fraught. It's the situation where the judge has to proceed most carefully to ensure a defendant's right to a fair trial. And that sort of case law stems back decades. And I would say that the opposite happened here. With not answering the question and then saying, well, you better have a verdict by 5-5-30, that's pretty much the opposite of, for example, other jurisdictions in their pattern instructions or even in their prim equivalent. Say, take all the time that you need to deliberate on this case. And again, the judge, in refusing to answer the question and giving this improper prim instruction and then telling them that if they don't have a verdict by 5 o'clock, he's hastening the verdict. Because the very day before, the judge told the jury this is going to be a two-day trial. We're going to hear the evidence the first day. And then the second day, we'll go as long as we need for the deliberations. So these jurors based their schedule, I'm sure, on the judge's admonitions that this is going to be a two-day trial. And the problem there is that after getting this instruction from the judge, the jurors now go back to deliberate. And now there's a pressure that the one juror in the minority is going to be responsible for everybody else's child care or letting their boss know they're not coming to work. I mean, it's an immense pressure in an 11-to-1 situation. And it's for that reason that this judge should have handled this cautiously. You really are out of time, and I think you've answered just the starting question. Are there any more questions from the panel? All right. You still have five minutes for rebuttal, but let's hear from Ms. Stewart. May it please the court. The trial court properly answered the jury's question when it delivered the prim instruction, and this was not an abuse of discretion. Comments and responses that are made to the jury are only coercive if the judge tells the jury that they must come to a verdict or that the option is not left open to not return a verdict and actual interference must be shown. So when the judge says to the jury that you're going to come back here and you're going to do this every day until I say otherwise, that sounds like the judge is saying you've got to come up with either you're going to come back with a guilty verdict or a not guilty verdict. You've got to come up with something because you're going to do this every day until I say otherwise. Well, it's the judge's position to guide the jury and to hopefully coming to a verdict. So it's OK to threaten them that you're going to do this every day until I say otherwise? No, this was not a threat. However, for the judge. My question, you're saying it's not a threat. My question is, so you're saying it's OK for a judge to tell a jury that you're going to come back here every day until I say otherwise? No, but it is OK for the judge to leave open the option for the jury not to reach a verdict, which is what the what the judge essentially did when he asked the jury to come back until he says otherwise. The day prior, the defense asked the judge about scheduling information. The same information was given to the defendant the day prior, as well as the jury, that deliberations would probably end about five or five thirty p.m. each day. The first day deliberations ended at five o'clock or around that time. So on the second day after the jury had deliberated for. Approximately the same time in the five o'clock hour was nearing. And so I'm just stopping you. The first day they were not deliberately correct. There was something that's correct. They were not deliberating. They were released at about five or five. That was prior to deliberating. Deliberations did not start until the second day. However, the judge informed the jury the first day that he would like to have them leave at about five or five thirty for their safety and so that they can handle any other business that they may have. So the court was not ad libbing the prime instruction, nor was the court coercing or threatening the jury in any manner. It is the court's authority on when to decide whether or not a jury has been hung. And just because that was the first day of deliberations, the court encouraged the deliberations to continue and tell them that it would be until the court decided otherwise that the deliberations. This wasn't this wasn't a situation of a hung jury as of yet. This was just simply a jury asking a question, a legal question. You agree that that was a legal question, correct? I do agree that it was a legal question. In just a second, you agreed to legal question in the jury had asked several factual questions prior to that, and the judge refused to answer those questions, correct? No, the judge did answer the factual question. There was. Go ahead, I'll let you finish, OK? There was a response given when the judge asked when one of the jurors asked about whether or not the defendant heard a car alarm. A juror asked a question about who owned the vehicle. At one point, the jury asked for transcripts. The judge gave the judge. The judge is not going to answer a question about whether or not the defendant had heard a car alarm. That's for the jury to determine. That's a factual question. I'm sure the judge didn't answer that question. But just so that we're clear where I'm going with this, the judge had asked several factual questions. Judge refused to answer. Now, you agree that now they were asking the legal question. You also agree that case law requires the judge to answer legal questions. The case law from our Supreme Court, where they recently reiterated not only in Lewis, but they also did it in Childs and they did it in people. They said that the trial court judge, when the jury asked a legal question, the judge shall answer the question. Now, you agree that that's the case law, correct? I do agree that that is the case law. So you agree this is a legal question. You agree that the case law says that the judge should answer the legal question. Here, the judge did not answer the question. Giving the prim instruction was was was not responsive to the legal question being asked. A simple answer is the defendant will not go free. It's that simple. He will not be found not guilty. Just because they're 11 to 1, he's not found not guilty. That's the answer to the question. He will not be found not guilty. But go ahead, I'll let you finish arguing. OK. However, the judge had already told the jury that you know, you know, I'm sorry. I get that you know, you know, amenities was required in order for the defendant to be found guilty. So the instructions were given to the jury prior to jury deliberations prior to the jury being selected and sworn. And prior to the prim instruction. So the jury had the information to this question already. The judge had decided at the point that he gave the prim instruction that the jury was. And that is one reason that we could. You broke up. We didn't hear what you said. The judge had already decided what that the jury was deadlocked when he gave the prim instruction. There was no evidence of that at that point. There was no evidence that they were deadlocked. They simply ask a question. That doesn't mean they're deadlocked. They're asking a question. They didn't. They never said they were deadlocked. No, they didn't say they were deadlocked, but the court determined that they were deadlocked. The court is in the best position to determine how the jury deliberations are proceeding, because the court actually was there from jury selection until the verdict was reached. This was a case where the issue was not complex. The defendant was only charged with one count of burglary and the time of deliberations were not. That long, for instance, prior to the jury asking the questions, deliberations happened for two hours in about 54 minutes. When the jury asked the question, deliberations happened anywhere from one and a half to two hours later before they reached the verdict. The issues were not complex. There were only four live witnesses, one of which was the defendant. And then photos of the evidence that were presented and a stipulation of the defendant regarding other photographs. Therefore, this was not a complex issue. And the court in its discretion decided that it probably would not take a long time for the jury to reach a verdict. Oh, there's no prescribed time for a jury to come to a verdict. But it's the court's discretion to decide whether or not they think the jury is at a point where it's deadlocked and whether or not deliberations should cease if the verdict has not been reached. Does the judge say at any point make a finding that the jury is deadlocked or he just gives the permit? No, the judge says in the record that he believes the jury is deadlocked and that he's going to issue the permit instruction.  Dawson, would you address Mr. Holland's point about the last sentence of the, I guess it's the prim where it instructs the jury that its job is to find the truth. Yes, and the argument is that it misstates the law. The jury's job is to determine whether the state has met its burden to show that the defendant's guilt has been established beyond a reasonable doubt. The prim instruction is not a misstatement of law. The prim instruction is a pattern instruction and pattern instructions are encouraged to be given. The prim instruction has been in existence for over 50 years. It has been tried and tested, and it has not been found to deprive the defendant of any rights. It is still good law. The fact that the prim instruction includes the ascertain the truth language does not insinuate that the burden of proof that the state has to me is any less than what has been stated in the previous instructions that was given to the jury. The jury was told that the defendant must, that the burden of proof on the state is beyond a reasonable doubt. That coupled with other instructions, such as the defendant does not have to testify on his behalf, that circumstantial evidence matters, and things of that nature further supports the state's burden of proof beyond a reasonable doubt. A defendant does cite some cases and speaks of other jurisdictions that has changed this language, but what is most important is that this language, even in those jurisdictions, has not been deemed to have been improper or invalid. The language has been changed out of an abundance of caution, specifically in our own circuit. It says that the language was changed for syntax purposes only, and the Silburn instruction, which is comparable to our prim instruction, says this is not per se, that language is not per se coercive language given to the jury. The ascertain the truth language deals with the contested facts after the jury is operating that they must find the defendant beyond a reasonable doubt. And would you also address Mr. Holland's argument, the argument he led with, which is the sentence was wildly disproportionate to the offense in this case, 10 years for basically stealing some tools from a truck. Well, in this case, burglary is not a minor property offense as defense would like us to believe. It is a forcible felony where physical force was used. This case is one in which there was just not the taking of valuable property. For instance, it's not a case where a hat and some cigarettes were taken. This is a case where there were power tools, wallet identification, a firefighter's uniform, copper fittings, and things of that nature were taken along with the truck window being busted out. What's most significant is that in this particular circumstance, this crime was committed in close proximity to the police station. The police observed the defendant while he was still completing the crime. And when the police made contact with the defendant, he fled from them. And even when they made physical contact after he hid under a bush, it still took one more police officer to subdue him. He disobeyed verbal command. This crime was not one that was committed or necessitated by any human need from the record. Therefore, based upon the defendant's background and the circumstances in this case, and the fact that any sentence within the sentencing range is presumed proper, I believe that the 10-year sentence that the court issued is not an abuse of discretion. And counsel, would you briefly address the judge's ad libbing at the end of the prim instruction to come back, go up the building, and say otherwise? Yes. That was not an ad lib to the prim instruction. It comes right after the prim instruction and the record, because that is the next thing that the court told the jury. The court told the jury that because the end of the day was nearing, or at least what one would consider a normal work day. 2 o'clock, counsel. It's 2.15 in the instruction. That's a short day, even at 26. Yes. So the court just wanted to let the jury know that by 5 or 5.30, if they had not reached a verdict, that they will come back the following day until he decided otherwise. That way, the jury would be prepared to schedule child care or make other arrangements for any other personal needs that they may have to take care of. Now, counsel, you agree that the jury came back with a verdict around 3.40 p.m.? The verdict was anywhere from 90 minutes to 2 hours after the court gave the prim instruction. Do you agree that the verdict came back around 3.40 a.m.? 3.40 p.m.? I believe there is one part of the record that says it came back at 3.40 p.m. Okay. So that was 2 hours earlier than the time that the judge told them they had to get this done. Correct. So that shows that it was even less coercive. At the close to the 5 o'clock hour or 4.50 when the judge said you need to come back with an instruction, that you will come back otherwise. It shows to me that they were so afraid of the judge that they knew they needed to get out of there because the judge had already told them you're going to come back as long as I say you have to come back. I mean, that doesn't even sound like an appropriate statement from a judge talking to a jury. Maybe to a defendant, a judge may talk that way. You're going to come back here until I say otherwise. I mean, is that the way that's not even what we expect of judges when they're talking to juries? Your Honor. The juries haven't done anything wrong. They don't need to be talked to and treated that way. The jury was not. It was a threat to the jury is what it was. Are you going to come up with a verdict today or are you going to keep coming back here until I say otherwise? That was a threat. Based on the record, I don't believe the jury perceived it as a threat. The jury still took time to deliberate. They took at least an hour and a half to two hours before they came up with a verdict. And the verdict was not reached at the five or five thirty p.m. hour. You're about out of time. Is there any more questions from the panel? Anything you want to say in summation? No. Thank you. Mr. Holland. Thank you. The crucial part of the timeline here is that the verdict came back before the deadline that the judge was threatening the jury with. There was some discussion about whether that that this new deadline conflicted with what with what the judge said the day before. There's no other way to read the record here is that the judge is saying the usual workday is nine to five and it's possible we may we may go later if necessary. When I say necessary, that would be for deliberations. So plan accordingly. Bring any medicine you need. I mean, the first day the judge is telling the jury you're going to be able to take the time you need. And then the only new information that preceded this addition to the prim instruction was that the judge now knows that there is one juror who is unwilling to convict. There's. Why are you so convinced or why are you so clear that the judges that was allowed to go? Well, we know we know this judge was under was under the impression that my client should be pleading guilty. And I think it's fair to say that we do agree that this case is not a complex prosecution. This is this is not a RICO case or something. So, I mean, it is coming down to whether or not jurors believe a police officer. So I think it's a safe assumption that when he says when the jury says 11 to one, the judge is assuming that's 11 to one in favor of killed. But the judge was assuming there's no evidence as to what the judge was assuming. You're just assuming based on the evidence that that's what the judge. You're right. Just make. I would just say it's a it's a fair inference here that when the jury said 11 to one, it wasn't 11 to one. And there's just one person holding out who's just demanding that they convict Mr. Brown of a burglary to an auto. And I want to say that we agree with Justice Walker that there wasn't evidence yet that the jury had been deadlocked. But I can't stress enough that even if the jury was deadlocked, that doesn't mean that the judge can refuse to answer the question. These are not two exclusive principles between prim and answering the question. The judge is under an obligation to answer the legal question. In terms of this last line that's in part of the pattern instruction about ascertaining the truth, the state is saying that's not erroneous. But I think it's more specific to say that no court is willing to reverse simply on just that one sentence. But every I think pretty much every jurisdiction that has looked at this sentence, it finds it to be improper. I mean, it does conflict with the idea that the burden is, excuse me, the obligation on the jury is not to of it's not your sole interest to ascertain the truth. It's not as if to the exclusion of all else. Your job is to find the truth of what actually happened here. So that line was improper. I just have a question. How can it be an abuse of discretion to refuse to give an instruction that's been approved by our Supreme Court time after time? How can that judge have abuse of discretion in giving that instruction? Illinois pattern instructions are sometimes wrong. And this court has never hesitated to point out the rare times. I'm not saying that there's just every pattern instruction has an error. But absolutely, this court has never hesitated to state that a pattern instruction is wrong. And I think it's particularly compelling in this case because this error is preserved. I mean, this isn't something that was I'm raising now for the first time before your honors. I mean, this issue was brought in front of this judge, and he didn't even entertain it. I mean, there wasn't even an exercise of discretion about whether or not this amendment should be made. And especially when the amendment is so simple. I mean, it's simply let's instruct the final sentence should be that the obligation on the jury is to ascertain whether the statement it's burden of proof. Mr. Holland, if the jury had come back with a simple question or simple statement, we're stuck. You know, we can't proceed any further. I won't use the word deadlock, but we're just stuck. Would it have been proper for the judge to give the prim instruction? Yes, if that prim instruction was correct. I mean, the final sentence is incorrect, period. And then the problem, of course, is that this specific prim instruction had this new conclusion by the judge that they now have this deadline hanging over them. So we're not objecting just because a prim instruction was given. Therefore, reversal is required. That's not our position at all. There was a confluence of factors here where this jury should have been deliberating with having their questions answered. They shouldn't have been deliberating with this artificial deadline looming over them. And it was especially fraught here with 11 to 1 split. And last, I do want to note on the sentencing issue, the state of Illinois, represented by their prosecutors here in Cook County, were of the position that four years in prison, in this case, is enough. Even after the jury trial, the state opted to not even argue in sentencing. So I understand that now the minimum is six years, which is a lot. Where did the four years come from? Was that offered in a plea deal? Yes, that was offered directly from the state. You haven't argued trial tax. No. My excessive sentence argument is simply the sentence is too long. I'm not saying that the judge relied on an improper factor. But, again, in rare circumstances, and this is one of those circumstances, this court has put a check on these sort of sentences. And the state of Illinois believed four years is an appropriate sentence. I mean, the minimum here is awfully long. I mean, it's doubling the normal minimum. Six years is enough. I mean, ten years is wildly. So let me ask you this. I mean, you acknowledge that the sentence is within the statutory range. It's back on the lower end, based on priors, et cetera. What's the strongest case that you have that we should look at in determining whether the sentence needs to be vacated and the matter set over for resentencing? Two points to that, Justice Taylor. The Allen case that we cited in our sentence argument is remarkably on point. The facts are virtually identical in every manner. And that's a situation where this court found that ten years for breaking into an auto with actually almost an identical criminal background was excessive. So I think that case is on point. Also, there's a case called Bust that we cited as a similar poverty-driven offense. And then, Justice Taylor, to your point about the sentencing range, the sentence, of course, is within the range. But I think the sentencing range here is not all that helpful for this court on review. And what I mean by that is that the sentencing range here was six to 30. Thirty years, of course, for Mr. Brown, that would be a life sentence. I mean, that would be essentially anywhere from six years to death in prison was the sentencing range here. So this is not a case where it's a three to seven and he got six and we're up here arguing it's excessive. And then this court would just say, well, it's one under the minimum and a few over the – or excuse me, a little over the minimum, a little under the maximum. I mean, this is a case where the judge had an awfully large range. And again, this court has previously found that this sort of sentence is excessive and it was excessive in this case. And just a couple of more questions here. Ms. Dawson said earlier that the judge found that the jury was deadlocked prior to giving the prim instruction. And based on my reading of the record, I never – I didn't find anything where the judge stated that the jury was deadlocked. The judge just simply said he was going to give the prim instruction. Can you weigh in on that? That's an accurate representation. And I think the state is getting it from – there is a post hoc explanation by the judge that you're correct, that when the question comes out, there's no analysis. The judge just says I'm giving prim. This is all preserved. So at the post trial motion, now the judge is explaining, well, I think they were deadlocked. Of course, the judge is going off, I guess, the same evidence that we are but for. The judge is also adding this was this lively, heated debate. But again, if it was – During jury deliberations, the judge never said I find that the jury is deadlocked or I believe the jury is deadlocked or anything of that nature. Is that correct? That's correct. Okay. Yeah, that was my understanding of the record, contrary to what counsel – what Ms. Dawson said earlier. And then the next question that I have is when the judge said he was going to give the prim instruction, counsel for Brown then proposed the instruction that counsel belief should be given. And then the judge said to counsel, are you asking me to hang this jury? So it seems to me that maybe the judge was just totally confused about what was going on at the moment. Do you want to respond to any of that? Because that's the question that the judge asked counsel. And counsel was like, well, no, the judge did not ask you to hang the jury. I'm saying this is the instruction that you should give. You should answer the question. I read that comment as being almost sarcastic, almost sort of a flippant – like it's an outrage. Why would we ever answer a question? Because, I mean, are you asking me to hang a jury? As if even proposing the answer is improper. Thank you. If there are no further questions, we'd ask that you reverse and remand for a new trial. But in the alternative, the sentence here is far too long. And so in the alternative, this court should reduce the sentence. Thank you both. We'll take the matter under advisement.